**Major Gregory L. RUSSELL, USAF, Plaintiff,**

v.

**The UNITED STATES GENERAL SERVICES ADMINISTRATION and the Department of the Air Force, Defendants.**

**Civil Action No. 95–B–2554.**

United States District Court, D. Colorado.

Aug. 22, 1996.

---

Alison Ruttenberg, Denver, CO, Denis H. Mark, William C. Waller, Jr., Denver, CO, for Plaintiff.

Stephen Taylor, Assistant U.S. Attorney, Denver, CO, Anne L. Weismann, Pamela A. Moreau, Trial Attorneys, U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, Glynis Lloyd, General Services Administration, Washington, DC, Captain Vicki Weeks, Air Force Civil Litigation, Special Litigation Branch, AFLSA/JACL, Arlington, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff, Major Gregory L. Russell (Major Russell), moves for partial summary judgment on his first claim for relief. Russell asserts that the United States General Services Administration's (GSA) release to the Air Force of his financial records contained in the GSA/GOVT–3 system of records violated the Privacy Act. 5 U.S.C. § 552a(b). The GSA and Air Force filed a cross-motion for summary judgment on both Major Russell's claims under the Privacy Act. For the reasons set forth in this order, I will grant defendants' cross-motion for summary judgment.

### I.

The facts pertaining to this case are set forth in *Russell v. Department of the Air Force*, 915 F.Supp. 1108 (D.Colo.1996) (*Russell I*). In *Russell I*, Major Russell asserted that American Express' and Citicorp Diner Club's (Citicorp) release of financial records to the Air Force, generated under the government travel program, violated the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3401 et seq. The financial records were generated pursuant to credit card contracts among GSA, the Air Force and Citicorp/American Express. These contracts provide for issuance of government credit cards to military personnel for official business use only. In *Russell I*, I held that under the RFPA, the Air Force is the "authorized representative" of the cardholder and, thus, a customer of American Express/Citicorp Diner Club. As such, it was entitled to the financial records to the same extent as the credit cardholder. Therefore, the release of the financial records from Citicorp or American Express to the Air Force did not violate the RFPA.

The GSA contracts required Citicorp and American Express to assemble and maintain monthly reports on government cardholder accounts. These reports include an account aging report which is sent to the Air Force each month. This report lists every government cardholder's account, with delinquent amounts listed in columns headed 30–60–90–120 days. American Express also sends out a separate 60–day list with the names of Air Force military personnel who are 60 days delinquent in paying their account. The GSA maintains the GSA/GOVT–3 system of records entitled "Travel Charge Card Pro-

gram." Records generated from this program may be found at American Express, Citicorp, GSA, and the finance office of the local installation of the agency which employs the individual, which in this case is the United States Air Force Academy (USAFA) finance office.

When American Express took over the credit card program from Citicorp in 1993, Major Russell was sent a card application form. At the bottom of the form was the following language:

> In accordance with the Privacy Act ... the following notice is provided: The information requested on the charge card application form is collected ... for the purpose of recording travel expenses incurred by the employee/member and to claim entitlements and allowances prescribed in applicable federal travel regulations. The purpose of the collection of this information is to provide Government agencies necessary information on the commercial travel and transportation payment and expense control system which provides travelers with charge cards for official travel and related expenses, attendant operational and control support and management information reports for expense control. Routine uses which may be made of the collected information are as follows: (1) transfers to appropriate Federal, State, local, or foreign agencies when relevant to civil, criminal, administrative, or regulatory investigations, (2) pursuant to a request of another Federal agency in connection with hiring, (3) to a Member of Congress or to a Congressional Staff Member in response to an inquiry of the Congressional Office made at the request of the individual about whom the record is maintained, (4) to officials of labor organizations when necessary to their duties or exclusive representations, (5) to a Federal agency for accumulating reporting data and monitoring the systems, (6) GSA contract travel agents assigned to agencies for billing of travel expenses, (7) listings, reports, and records to GSA by the contractor to conduct audits of carrier charges to the Government, and (8) any other use specified by GSA in the system of records entitled "Travel Charge Card Program GSA/GOVT–3" as published in the Federal Register periodically by the GSA.

Pursuant to an investigation into Major Russell's use of funds associated with the Cadet Forensics Team, various Air Force officers and agents obtained financial records from the GSA/GOVT–3 system of records at the USAFA finance office. No GSA officer or employee works at the USAFA finance office.

## II.

Summary judgment shall enter where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a movant establishes entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). The operative inquiry is whether, based on all the documents submitted, a reasonable trier of fact could find by a preponderance of evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mares,* 971 F.2d at 494. Summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

## III.

 Major Russell claims that the disclosure of financial records to the Air Force by American Express, Citicorp and the GSA contained in the GSA/GOVT–3 system of records violated the Privacy Act because no consent to disclosure was obtained from Major Russell pursuant to 5 U.S.C. § 552a(b), and the agencies did not comply with 5 U.S.C. § 552a(e)(4). "The Privacy Act is based on the principles that there should be no secret federal information files or government data banks maintained on individuals

and that the dissemination of, and access to, personal information in government data banks should be strictly controlled." *Russell I*, 915 F.Supp. at 1115.

The Privacy Act begins with the general rule that "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). The Privacy Act sets forth numerous agency requirements to maintain a "system of records." 5 U.S.C. § 552a(e)(1)–(12). Included is the requirement that the agency publish in the Federal Register "each routine use of the records contained in the system, including the categories of users and the purpose of such use." 5 U.S.C. § 552a(e)(4)(D). The initial inquiry is whether Major Russell's financial records were part of a system of records as contemplated under the Privacy Act.

In *Russell I*, Major Russell argued that the disclosure of financial records from American Express and Citicorp to the Air Force violated the RFPA. The contractual relationship between and among American Express, Citicorp, the Air Force and Major Russell was determined to create an agency relationship between Major Russell and the Air Force. As such, the Air Force was Major Russell's "authorized representative" and, therefore, was entitled to the financial information as a "customer." From this analysis it follows that the Air Force independently acquired and lawfully maintains its own system of records. The records produced under the travel program are the business records of the Air Force as generated by their agents.

Moreover, access to these records is necessary to ensure proper management of Air Force funds. Although the financial records which are assembled and maintained are based on individual accounts, as among Major Russell, the GSA, and the Air Force, the Privacy Act does not apply because they are records created by individuals acting as "agents" of the Air Force and, therefore, they are the Air Force's records not "secret

government files." I hold, as a matter of law, that the Air Force's use and disclosure of Major Russell's financial records contained within the GSA/GOVT–3 system of records did not violate the Privacy Act. Accordingly, I grant summary judgment in favor of the Air Force and GSA on Major Russell's first claim.

■ Major Russell's second claim alleges that the Air Force violated the Privacy Act when it disclosed in public pleadings in *Russell I* and in this case information regarding the Air Force OSI investigation of Major Russell's alleged misuse of Forensic Club funds. He argues that release of this information was not "relevant" to litigation in *Russell I* or in this action.

The original release of information pertaining to the investigation of Major Russell for alleged misuse of Forensic Club funds occurred at an injunctive hearing on June 21, 1995 in *Russell I*. In an attempt to reach stipulated facts, the issue of Major Russell's eligibility for early retirement arose. The discussion was as follows:

THE COURT: Okay. Mr. Russell has applied for early retirement under a plan whereby the Air Force is offering 1000 slots to officers with certain requirements. However, Mr. Russell's application for early retirement is on administrative hold, and I have here "pending resolution of this matter," but I think that—it is on hold.

MS. RUTTENBURG: We had some wrong information. He applied for early retirement in the summer of '94 or late summer of '94. He was denied because he was under investigation. And now even if this matter is resolved, the window has closed, and he will not be eligible for early retirement.

MS. KOFSKY: Your Honor, we would like to clarify. As we represented to you in one of the declarations we filed under seal, that the actual reason for placing Major Russell's early retirement application on hold initially had nothing to do with this current investigation. It had do with an embezzlement of funds related to the Forensics Club. It had nothing to do with the current investigation that we're dis-

**1146**

cussing and that resulted in the Article 32 investigation proceeding related to the governments cards.

Whether Major Russell had been investigated for embezzlement of funds and whether the investigation caused a hold to be placed on Major Russell's early retirement application was relevant to *Russell I*. Moreover, Major Russell opened the door to the discussion involving this investigation. He does not contend that any of the underlying facts about the investigation were revealed. The disclosure of the OSI investigation of Major Russell for embezzlement via the Department of Justice was permissible under its routine use for litigation purposes:

> [A] record, or any facts derived therefrom, may be disclosed ... in a proceeding before a court or adjudicative body before which the Civil Division is authorized to appear when the United States, or any agency or subdivision thereof, is a party to litigation and such records are determined by the Civil Division to be arguably relevant to the litigation. 53 FR 40500, 40504 (October 17, 1988).

Subsequent disclosure of this information in this case did not violate the Privacy Act because that information was already a matter of the public record. Accordingly, I grant summary judgment in favor of the Air Force and GSA on Major Russell's second claim.

It is therefore ORDERED that:

1. Plaintiff's motion for partial summary judgment is DENIED.

2. Defendants' motion for summary judgment is GRANTED.

3. Judgment is awarded in favor of defendants and against plaintiff with costs awarded to defendants.